UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
TAMIKA LATOYA RICKS,

                            Plaintiff,          <u>MEMORANDUM & ORDER</u>
                                                10-CV-5236(JS)

        -against-

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                            Defendant.
----------------------------------------X
APPEARANCES
For Plaintiff:        Francesca Zeltmann, Esq.
                      Sullivan and Kehoe
                      44 Main Street
                      Kings Park, NY 11754

For Defendant:        Candace Scott Appleton, Esq.
                      United States Attorney's Office
                      Eastern District of New York
                      271 Cadman Plaza East
                      Brooklyn, NY 11201

SEYBERT, District Judge:

        Plaintiff Tamika Latoya Ricks ("Plaintiff") commenced

this action pursuant to Section 205(g) of the  Social Security

Act, as amended, 42 U.S.C. § 405(g), challenging the Defendant

Commissioner of Social Security's (the "Commissioner") denial of

her application for disability insurance benefits.  Presently

pending before the Court are Plaintiff's and the Commissioner's

cross-motions for judgment on the pleadings.  For the reasons

explained  below,  the  Commissioner's  motion  is  DENIED,

Plaintiff's motion is GRANTED, and this matter is remanded to

the Commissioner for further consideration in accordance with this Memorandum and Order.

BACKGROUND

On May 2, 2007, Plaintiff was involved in a motor vehicle accident. (R. 224.) On March 12, 2008, she filed an application for disability insurance benefits asserting that she had been unable to work since May 21, 2007 as a result of the injuries sustained in the accident. (R. 94-96.) Her application was denied on April 29, 2008. (R. 38-41.) On June 20, 2008, Plaintiff requested a hearing before an administrative law judge ("ALJ") arguing that she is "still totally disabled." (R. 43.)

The hearing took place on November 18, 2009, before ALJ Andrew S. Weiss. (R. 19.) Plaintiff was represented by counsel at the hearing and was the only witness to testify. (R. 19-31.) The Court will briefly summarize Plaintiff's testimony.

She was born in 1976. (R. 22.) She is 5 feet 7 inches tall and weighs approximately 270 pounds. (R. 114.) She is a single mother to her two children, who were fifteen and thirteen years old respectively as of the date of the hearing. (R. 26.) She is a high school graduate and attended three years of college. (R. 22-23, 120.) She was steadily employed from 1997 through 2004. (R. 24.) In August 2006, she began working as a customer service representative for Cablevision. (R. 115.)

The job involved assisting customers over the phone (R. 23); it entailed no walking but required her to stand for up to two hours each day, sit for up to six hours each day, and occasionally lift and carry objects weighing no more than ten pounds (R. 116). She stopped working for Cablevision on May 21, 2007 and has been unable to return to work since due to persistent back pain. (R. 23, 28.)

Plaintiff testified that her back pain is about a seven in severity on a scale of one to ten. (R. 28.) The pain is stabbing, aching, tingling and constant, originates in her lower back and left hip, and runs down both legs to the tips of her toes. (R. 108-09.) The pain is so severe that she requires the assistance of a motorized wheelchair. (R. 106.) She cannot sit or stand for longer than twenty minutes, walk more than one block, or lift anything heavier than a gallon of milk. (R. 29.) Plaintiff asserts that the pain has also limited her ability to perform "just about every [daily] activity." (R. 100.) Her two children help with household chores and grocery shopping, and Plaintiff regularly requires the assistance of her daughter in getting in and out of the shower and on and off the toilet. (R. 101-02.) Although she can drive short distances and prepare meals for her children, her social life "no longer exist[s]" and she rarely leaves the house for activities other than doctor appointments and physical therapy. (R. 102-05.)

In addition to Plaintiff's testimony and personal statements, the ALJ also had before him all of Plaintiff's medical records. She first sought medical attention for the injuries she sustained in the accident on May 3, 2007--the day following the accident. (R. 224.) The pain had been getting progressively worse since the accident, so she took herself to the New Island Hospital emergency room for x-rays. (R. 224.) The x-rays were negative for fracture, and Plaintiff was discharged the same day. (R. 224.) Thereafter, she saw her primary care physician, Dr. Donato Balsamo, who prescribed oxycodone for the pain and referred her to Dr. Paul Alongi, an orthopedic specialist. (R. 224.)

Plaintiff first saw Dr. Alongi on May 11, 2007. (R. 224.) She complained of neck and back pain as well as pain in her left shoulder, left hip, and numbness in her left arm and leg. (R. 224.) Dr. Alongi found tenderness to palpation in areas of her neck and lumbar spine and noted limited range of motion of the cervical spine and lower back. (R. 225.) His diagnosis was cervical and lumbar strain, and he prescribed an anti-inflammatory medication, Darvocet for severe pain, and an MRI of the cervical and lumbar spine. (R. 225.)

The MRI of the lumbar spine, performed on May 16, 2007, revealed a small central disc herniation at L5-S1 and

questionable disc herniation at T10-11. (R. 216.) The MRI of the cervical spine was "essentially unremarkable." (R. 236.)

Plaintiff returned to Dr. Alongi on May 18, 2007 complaining of continued neck and back pain--about a six to eight in severity on a scale of one to ten. (R. 225.) Dr. Alongi noted that she appeared uncomfortable and had a limited range of motion of her lower back, and he found tenderness to palpation in areas of her neck and lumbar spine. (R. 225.) He recommended that she continue with her prescribed medications, start physical therapy, and return for a follow-up in two weeks. (R. 226.)

However, the pain persisted, and she returned to Dr. Alongi just a few days later on May 22, 2007 complaining of increased back and neck pain. (R. 226.) Dr. Alongi noted that Plaintiff appeared uncomfortable, was having difficulty walking, and had a "significantly limited range of motion about the lower back." (R. 226.) She was prescribed a stronger pain medication and told to continue with her other medications, remain out of work, and return to his office in a week for a follow-up. (R. 226.)

Plaintiff next saw Dr. Alongi on May 29, 2007. (R. 226.) Although she had begun physical therapy, which helped "somewhat," her back pain was getting increasingly worse--about an eight in severity on a scale of one to ten. (R. 226.) She

appeared uncomfortable and cried multiple times during the appointment. (R. 226.) Dr. Alongi assessed Plaintiff as "totally disabled," and prescribed a stronger anti-inflammatory. (R. 227.) She was to continue with her other medications and physical therapy and follow up in one week. (R. 227.)

She returned to Dr. Alongi on June 8, 2007 "feeling slightly better" even though she still reported pain as an eight in severity on a scale of one to ten. (R. 227.) Dr. Alongi again noted that Plaintiff appeared uncomfortable, had a limited range of motion of the neck and lower back, and demonstrated tenderness to palpation in areas of her lumbar spine, but his impression was that her symptoms were "slowly improving." (R. 227.) He advised that she continue with her current medications and physical therapy. (R. 227.)

Plaintiff saw Dr. Alongi again on June 22, July 24, and August 21, 2007. (R. 227-28.) At each appointment, Dr. Alongi observed that Plaintiff was increasingly more comfortable and her symptoms were improving due to physical therapy, but "her progress was slow." (R. 227-28.) She reported pain at a six to eight in severity on a scale of one to ten. (R. 228.) He advised that she not return to work, continue with her medications but only as needed, and continue with physical therapy. (R. 227-28.) Plaintiff continued with physical

therapy until early September when she was forced to stop because her no-fault insurance coverage was denied. (R. 228.)

On September 21, 2007, Plaintiff went to the emergency room at New Island Hospital complaining of right ankle and foot pain. (R. 151.) She reported pain at a ten in severity on a scale of one to ten. (R. 151.) The emergency room doctor observed that Plaintiff's calf was mildly tender, that her right foot was swollen, and that she had reduced range of motion in her foot. (R. 151.) An ultrasound of Plaintiff's foot was normal, and x-rays showed no evidence of a fracture. (R. 153-54.) She was diagnosed as having a leg cramp, prescribed Motrin, and discharged that same day. (R. 152.)

Plaintiff returned to Dr. Alongi on September 28, 2007 complaining of exacerbated symptoms since stopping physical therapy. (R. 228.) Dr. Alongi noted that Plaintiff appeared uncomfortable and had difficulty walking. (R. 228.) Her other symptoms--reduced range of motion and tenderness to palpation of her lower back--continued. (R. 228.) Dr. Alongi recommended that she start physical therapy again and not return to work. (R. 228.)

When Plaintiff next saw Dr. Alongi on October 23, 2007, she had yet to resume physical therapy "due to money issues and since her no-fault insurance was denied." (R. 228.) But she "was trying to straighten out her financial situation in

order to proceed with physical therapy." (R. 229.) Dr. Alongi noted that she continued to have a limited range of motion and tenderness to palpation of the lower back. (R. 229.) He also noted that straight leg raising caused minor discomfort in the lumbar spine. (R. 229.)

On November 13, 2007, Dr. Alongi wrote a letter to Plaintiff's personal injury attorney summarizing his treatment to date. (R. 224-29.) He stated that despite conservative treatment, her persistent neck and back pain have continued. (R. 229.) He recommended "continued conservative care, including physical therapy, pain management, and possibly epidural steroid injections." (R. 229.)

When Plaintiff next saw Dr. Alongi on November 30, 2007, she had resumed physical therapy which "appear[ed] to be helping." (R. 223.) Although still complaining of persistent back pain and pain radiating into her lower extremities at a six to eight in severity on a scale of one to ten, she appeared slightly more comfortable and was "doing somewhat better." (R. 223.) Dr. Alongi's examination revealed continued limitation in the range of motion of her lower back and tenderness to palpation along the lower lumbar region. (R. 223.) He advised that she continue with physical therapy and medication as needed and concluded that "she [was] not ready to return to work as of yet." (R. 223.)

8

Dr. Alongi completed an attending physician statement for MetLife on January 14, 2008. (R. 237-239.) He diagnosed Plaintiff as suffering from a herniated disc at L5-S1 and cervical strain and opined that she was capable of sitting, standing, and walking for one-hour each per day intermittently, and occasionally lifting up to ten pounds. (R. 237-38.) In his opinion, Plaintiff was unable to perform her job duties due to her persistent neck and back pain. (R. 238.)

Plaintiff started pain management on January 28, 2008 with Dr. Nolan Tzou at the Huntington Center for Pain Treatment.[1] (R. 166.) She described pain in her lower back as constant, often radiating down her left leg, and at a seven to eight in severity on a scale of one to ten. (R. 166.) She also noted that sitting aggravated the pain and that she was unable to sit, stand or walk for any prolonged period of time. (R. 166.) Dr. Tzou assessed Plaintiff as suffering from disc disruption, lower extremity pain and radiculopathy and prescribed lidoderm patches. (R. 169.) She scheduled an epidural injection for the end of February. (R. 182.)

Plaintiff returned to Dr. Alongi's office on February 15, 2008, and saw Robert McCord, a registered physician's assistant. (R. 182.) Mr. McCord noted that Plaintiff had a

[1] Plaintiff was referred to Dr. Tzou by Dr. Marino. (R. 166.) This is the only reference in the administrative record to Dr. Marino.

limited range of motion in her cervical and lumbar spine and tenderness to palpation of the lumbar spine. (R. 182.) He also noted that "[s]he is disabled." (R. 182.)

Plaintiff next saw Dr. Alongi on April 8, 2008 after receiving an epidural injection. (R. 183.) She reported feeling "much better," with pain at a five on a scale of one to ten. (R. 183.) She was no longer taking any medication for pain. (R. 183.) Dr. Alongi noted continued limitations in the range of motion of her lower back and tenderness to palpation of the lower lumbar region, but felt that "[o]verall, Ms. Ricks [was] doing better." (R. 183.) He advised that she continue with physical therapy, advance her activities, and follow-up in three to four weeks. (R. 183.)

Dr. Balsamo submitted a report to the New York State Office of Temporary and Disability Assistance on April 10, 2008. (R. 170-78.) Dr. Balsamo indicated that he was not treating Plaintiff for pain, but noted that his physical findings-- limited range of motion of the lumbar spine and hips and lumbar spasms--were consistent with Plaintiff's reported level of pain. (R. 173, 175, 178.)

On April 24, 2008, Plaintiff was examined by Dr. Leonard Skeene, a consultative examiner for the Social Security Administration and an orthopedic specialist. (R. 185.) Plaintiff reported back pain as a seven in intensity on a scale

of one to ten. (R. 185.) Dr. Skeene diagnosed Plaintiff with disc disease of the lumbar spine and other unrelated ailments. (R. 187.) He noted that she had limited range of motion of the lumbar spine, mild tenderness over the lumbar spine, and moderate paraspinal muscle spasms. (R. 187.) He assessed Plaintiff as having "moderate limitation" for prolonged walking and heavy lifting but no limitations in her ability to sit or stand for prolonged periods of time. (R. 187.)

On November 7, 2008, Plaintiff changed her pain management doctor to Dr. Harvey Finkelstein of Pain Care Medicine of Long Island.[2] (R. 209.) He noted that Plaintiff had previously received two epidural injections from Dr. Tzou, which provided relief for approximately four to six weeks. (R. 273.) His physical examination revealed a limited range of motion of the lumbar spine and pain across the lumbar spine radiating down the right leg. (R. 274.) He diagnosed Plaintiff with herniated disc disease with left leg radiculopathy. (R. 274.) He provided Plaintiff with an epidural injection on November 20, 2008 (R. 202-03), noted on December 12, 2008[3] that she was

_____

[2] The administrative record is void of any evidence that Plaintiff received treatment between April 24, 2008 and November 7, 2008.

[3] That same day, Dr. Finkelstein completed an insurance form for MetLife, noting that Plaintiff was capable of sitting continuously for one hour, standing continuously for one hour, and walking intermittently for up to two hours. (R. 241.) He

11

feeling "much better" with pain at a five in severity on a scale of one to ten (R. 201), and administered another epidural injection on December 27, 2008 (R. 198).

Plaintiff saw Dr. Finkelstein again on January 30, 2009. She reported mild to moderate back pain at a five to six in severity on a scale of one to ten but stated that she rarely experienced leg pain anymore. (R. 197.) She also stated that sitting was uncomfortable after thirty to forty minutes and standing was uncomfortable after ten minutes. (R. 197.) Dr. Finkelstein opined that she is fully disabled. (R. 197.)

On her next visit on April 13, 2009, Dr. Finkelstein noted that Plaintiff's symptoms were improving due to lack of activity, and he assessed her as partially disabled. (R. 256.) He administered another epidural injection on June 18, 2009. (R. 248-50.)

Dr. Finkelstein completed a medical assessment of Plaintiff for MetLife dated June 24, 2009, opining that she could sit for twenty minutes at a time for up to one to two hours a day, stand for ten to fifteen minutes at a time for up to one to two hours a day, and walk for fifteen minutes at a time for up to one hour a day. (R. 246.) He concluded that she could not return to work, even with restrictions. (R. 246.)

---

stated that Plaintiff could not return to work because of back pain, and he expected some improvement in her condition within one year. (R. 241.)

Plaintiff has not seen Dr. Finkelstein since June 2009 due to issues with her insurance (R. 25); therefore, as of the date of the hearing, Plaintiff had been without treatment or medication of any kind for approximately five months.

After reviewing all of the above-evidence, the ALJ issued his decision on December 21, 2009, finding that Plaintiff is not disabled. (R. 15.) The ALJ found Plaintiff's testimony regarding the extent and limiting effects of her pain not to be credible, stating that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of [those] symptoms [were] not credible to the extent that they are inconsistent with [his] residual functional capacity assessment." (R. 13.) The ALJ gave the greatest weight to Dr. Skeene's opinion which was compatible with sedentary work because "it was consistent with the clinical and diagnostic findings documented in the medical record." (R. 14.) He afforded little weight to the opinions of Dr. Alongi and Dr. Finkelstein which were compatible with less than sedentary work because "they are inconsistent with their own clinical findings as well as MRI testing showing only a small disc herniation with no stenosis or compression of the spinal cord." (R. 14.) The ALJ concluded that "there is no medical evidence supporting a limitation in sitting for less

than six-hours in an eight-hour workday," and thus Plaintiff's symptoms did not preclude her from performing her past work as a customer service representative. (R. 14.)

Plaintiff sought review of the ALJ's decision by the Appeals Council (R. 6); the appeal was denied on September 30, 2010 (R. 1-2). Thus the ALJ's decision is considered the final decision of the Commissioner. (R. 1.)

Plaintiff commenced this action on November 12, 2010. (Docket Entry 1.) The Commissioner filed the administrative record and his Answer on February 10, 2011 (Docket Entries 5-6) and the pending motion for judgment on the pleadings on April 8, 2011 (Docket Entry 9). Plaintiff opposed and cross-moved for judgment on the pleadings on May 5, 2011. (Docket Entry 12.)

DISCUSSION

I. Standard of Review

In reviewing the ruling of the ALJ, this Court will not determine de novo whether Plaintiff is in fact disabled. Thus, even if the Court may have reached a different decision, it must not substitute its own judgment for that of the ALJ. See Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991). Instead, this Court must determine whether the ALJ's findings are supported by "substantial evidence in the record as a whole or are based on an erroneous legal standard." Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000) superseded by statute on other

grounds, 20 C.F.R. § 404.1560 (internal quotations marks and citation omitted). If the Court finds that substantial evidence exists to support the Commissioner's decision, the decision will be upheld, even if evidence to the contrary exists. See Johnson v. Barnhart, 269 F. Supp. 2d 82, 84 (E.D.N.Y. 2003). "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support a conclusion." Id. The substantial evidence test applies not only to the ALJ's findings of fact, but also to any inferences and conclusions of law drawn from such facts. See id.

To determine if substantial evidence exists to support the ALJ's findings, this Court must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences may be drawn." See Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g).

II. Eligibility for Benefits

A claimant must be disabled within the meaning of the Social Security Act (the "Act") to receive federal disability benefits. See Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); 42 U.S.C. § 423(a), (d). A claimant is disabled under the Act when he can show an "inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). The claimant's impairment must be of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

The Commissioner must apply a five-step analysis when determining if a claimant is disabled as defined by the Act. See Shaw, 221 F.3d at 132. First, the claimant must not be engaged in any substantial gainful activity. See 20 C.F.R. § 404.1520(b). Second, the claimant must prove that he or she suffers from a "severe impairment" that significantly limits his or her mental or physical ability to do basic work activities. See 20 C.F.R. § 404.1520(c). Third, the claimant must show that his or her impairment is equivalent to one of the impairments listed in Appendix 1 of the Regulations. See 20 C.F.R. § 404.1520(d). Fourth, if his or her impairment or its equivalent is not listed in the Appendix, the claimant must show that he or she does not have the residual functional capacity to perform tasks required in his or her previous employment. See 20 C.F.R. § 404.1520(e)-(f). Fifth, if the claimant successfully makes these showings, the Commissioner must determine if there is any

other work within the national economy that the claimant is able to perform.  See 20 C.F.R. § 404.1520(g).  The claimant has the burden of proving the first four steps of the analysis, while the Commissioner carries the burden of proof for the last step.  See Shaw, 221 F.3d at 132.  "In making the required determinations, the Commissioner must consider: (1) the objective medical facts; (2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family, and others; and (4) the claimant's educational background, age, and work experience."  Boryk v. Barnhart, No. 02-CV-2465, 2003 WL 22170596, at *8 (E.D.N.Y. Sept. 17, 2003) (citation omitted).

In the present case, the ALJ performed the above analysis, and his conclusions as to the first three steps are not in dispute.  He found that Plaintiff was not employed and that her injuries constituted a severe impairment that limited her capacity to work.  The ALJ next determined that neither the Plaintiff's impairment nor a medical equivalent was among those enumerated in Appendix 1 and then proceeded to determine whether Plaintiff retained the residual functional capacity to perform her past work as a customer service representative.  The ALJ found that Plaintiff was capable of performing her past work and, therefore, analysis under step five was unnecessary.

Plaintiff asserts that the ALJ committed legal error in determining that she retained residual functional capacity to perform her past work by failing to (1) give proper controlling weight to her treating physicians and (2) properly evaluate her subjective complaints of pain.

A.    Deference to Treating Physicians

Plaintiff argues that the ALJ gave insufficient weight to the opinions of her treating physicians in determining that she is capable of performing sedentary work.  The Court agrees.

According to the "treating physician rule," the medical opinions and reports of a claimant's treating physicians are to be given "special evidentiary weight."  Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).  Specifically, the regulations state:

> Generally, we give more weight to opinions from your treating sources . . . .  If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 416.927(d)(2).

When an ALJ does not accord controlling weight to the medical opinion of a treating physician, the ALJ "must consider various 'factors' to determine how much weight to give to the

18

opinion." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004);

see also Schnetzler v. Astrue, 533 F. Supp. 2d 272, 286 (E.D.N.Y

2008).  Such factors include:

> (1) the length of the treatment relationship
> and frequency of the examination; (2) the
> nature and extent of the treatment
> relationship; (3) the extent to which the
> opinion is supported by medical and
> laboratory findings; (4) the physician's
> consistency with the record as a whole; and
> (5) whether the physician is a specialist.

Schnetzler, 533 F. Supp. 2d at 286; see also 20 C.F.R. §§

404.1527(d)(2), 416.927(d)(2); Halloran, 362 F.3d at 32.

Additionally, the ALJ is required to provide "'good reasons' for

the weight she gives to the treating source's opinion."

Halloran, 362 F.3d at 32-33; see also Pagan v. Apfel, 99 F.

Supp. 2d 407, 411 (S.D.N.Y. 2000) ("At the very least, the

Commissioner must give express recognition to a treating

source's report and explain his or her reasons for discrediting

such a report.").  "Failure to provide 'good reasons' for not

crediting the opinion of a claimant's treating physician is

ground for remand." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir.

1999).

Here, the ALJ rejected the findings of Dr. Alongi and

Dr. Finkelstein stating that "they are inconsistent with their

own clinical findings as well as MRI testing showing only a

small disc herniation with no stenosis or compression of the

spinal cord" and only afforded them "limited weight," and he afforded the greatest weight to Dr. Skeene's opinion stating that it "is compatible with sedentary work and is consistent with the clinical and diagnostic findings documented in the medical record." (R. 14.) The Court finds that this explanation for discounting Dr. Alongi's and Dr. Finkelstein's opinions is inadequate.

Dr. Alongi, Dr. Finkelstein, and Dr. Skeene all had similar diagnoses--herniated disc disease of the lumbar spine-- and all noted similar limitations in the range of motion of the lumbar spine, tenderness to palpation of areas of the lumbar spine, and moderate muscle spasms. Yet, based on substantially similar diagnoses, observations and test results, the doctors reached different conclusions. Dr. Alongi, who had been treating Plaintiff monthly for approximately one year, and Dr. Finkelstein, who treated Plaintiff over six times in a nine month period, both noted limitations in Plaintiff's ability to sit, stand, and walk for extended periods of time consistent with an inability to perform sedentary work. Dr. Skeene, on the other hand, who examined Plaintiff only once, noted no limitations in her ability to sit and stand and only a moderate limitation in her ability to walk or do heavy lifting for a prolonged period of time.

The Court finds that the opinions of Plaintiff's treating physicians are supported by the record. Their opinions are consistent with one another and with Dr. Balsamo's conclusion that Plaintiff's subjective reports of pain were consistent with his findings. Additionally, "in light of the treating physicians' knowledge of the Plaintiff's medical record, it would appear that their opinions should have carried more weight with the ALJ." Pagan, 99 F. Supp. 2d at 411. Yet the ALJ chose to credit Dr. Skeene's findings because they were consistent with the medical evidence and chose to discredit Dr. Alongi's and Dr. Finkelstein's evaluations because they were not.

Although there is some evidence in the record to support Dr. Skeene's findings--namely, his observations that she was not in pain, walked normally, and needed no help during his examination and the fact that she was no longer seeing a pain specialist--"the ALJ failed to indicate what factors were reviewed in [his] decision to not accord [the treating physicians'] opinions controlling weight." Schnetzler, 533 F. Supp. 2d at 287. There is no indication that the ALJ considered the length and frequency of the doctors' evaluations of Plaintiff over time or the nature and extent of the doctors' relationships with Plaintiff. In fact, the ALJ failed to even acknowledge the treating physician rule in its decision.

Therefore, the Court must remand the matter so the ALJ can appropriately weigh the reports of the treating physicians.

B.  <u>Subjective Evidence of Pain</u>

Plaintiff also argues that the ALJ erred by not giving proper consideration to her subjective reports of pain.  The Court agrees.  The Second Circuit has held that "the subjective element of pain is an important factor to be considered in determining disability."  <u>Mimms v. Heckler</u>, 750 F.2d 180, 186 (2d Cir. 1984).  "[T]he ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." <u>McLaughlin v. Sec'y of Health, Educ. & Welfare</u>, 612 F.2d 701, 705 (2d Cir. 1980) (internal quotation marks and citation omitted).  The Court will uphold the ALJ's decision to discount a claimant's subjective complaints of pain so long as the decision is supported by substantial evidence.  <u>See</u> <u>Aponte v. Sec'y, Dep't of Health & Human Servs.</u>, 728 F.2d 588, 591 (2d Cir. 1984).

In evaluating a claimant's credibility, the ALJ should consider the following factors:

> (1) claimant's daily activities, (2) location, duration, frequency, and intensity of claimant's symptoms, (3) precipitating and aggravating factors, (4) type, dosage, effectiveness, and side effects of any

medication taken to relieve symptoms, (5) other treatment received to relieve symptoms, (6) any measures taken by claimant to relieve symptoms, and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

McDonald v. Astrue, No. 08-CV-3916, 2011 WL 4629592, at *8 (E.D.N.Y. Sept. 30, 2011) (internal quotation marks and citations omitted). "Where an ALJ rejects subjective testimony concerning pain, the ALJ 'must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence.'" Mira v. Astrue, No. 09-CV-2012, 2011 WL 4056050, at *13 (E.D.N.Y. Sept. 2, 2011) (quoting Brandon v. Bowen, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).

Here, the ALJ found "[a]fter careful consideration of the evidence" that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of [those] symptoms [were] not credible to the extent they [were] inconsistent with the above residual functional capacity assessment." (R. 13.) However, Plaintiff has consistently reported moderate to intense lower back pain, as documented by her treating physicians and Dr. Skeene. Additionally, Dr. Balsamo stated that Plaintiff's

reported level of pain was consistent with his physical findings.

The ALJ's reasons for discrediting Plaintiff's testimony, on the other hand, are unclear. Since the ALJ did not engage in any meaningful discussion of the factors listed above, and his decision does not adequately explain why he found Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms to be "not credible," remand is required. McDonald, 2011 WL 4629592, at *8; Mira, 2011 WL 4056050, at *18.

<u>CONCLUSION</u>

For the foregoing reasons, the Commissioner's motion is DENIED, Plaintiff's motion is GRANTED, and this case is remanded for further proceedings consistent with this Memorandum and Order. The Clerk of the Court is directed to mark this matter closed.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:    January __26__, 2012
         Central Islip, NY